592 So.2d 818 (1991)
STATE of Louisiana
v.
Kevin T. JOHNSON.
No. 91-KA-414.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1991.
John D. Rawls, Staff Appellate Counsel, 24th Judicial District, Indigent Defender Bd., Gretna, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Denis Ganucheau, Dorothy A. Pendergast, Asst. Dist. Attys., (Louise Korns, of counsel) Office of the Dist. Atty., 24th Judicial Dist., Parish of Jefferson, Gretna, for plaintiffappellee.
Before KLIEBERT, C.J., and GAUDIN and GOTHARD, JJ.
KLIEBERT, Chief Judge.
The defendant, Kevin Johnson, by bill of information filed in the Court below on August 20, 1990, was charged with possession of marijuana, LSA-R.S. 40:966; disturbing the peace, LSA-R.S. 14:103; and simple assault, LSA-R.S. 14:38. At the arraignment conducted on October 9, 1990, defendant pled not guilty. The case proceeded to trial on February 27, 1991 and after considering the evidence presented, the trial judge found defendant not guilty *819 of disturbing the peace, but guilty of possession of marijuana and simple assault.
Defendant was thereafter sentenced to serve four months in the Jefferson Parish Correctional Center on the possession of marijuana charge and two months in parish prison on the simple assault charge, said sentences to run consecutively, with credit for time served. The court also ordered the defendant to pay various court costs and fees. The defendant appealed.[1] We affirm the conviction and sentence.
The transcript of the trial reveals the following: Deputy Charles Smith, employed with the Jefferson Parish Sheriff's Office, Street Crimes Task Force, testified that on July 27, 1990, he was proceeding down Sheldon Street in Jefferson Parish when he observed a motorcycle leave the Phoenix Lounge located at 8600 Sheldon Street at a high rate of speed and then proceed to disregard the stop sign at Sheldon and Atlanta Streets. After observing this traffic violation, Officer Smith, who was in a marked patrol car, activated his red lights and sirens. Despite the officer's actions, the driver of the motorcycle continued at a high rate of speed. The officer was finally able to stop the motorcycle at Calhoun and Milan Streets in Jefferson Parish, after its driver, Reginald Bardal, ran a second stop sign.
At this time, Officer Smith asked the driver to step from the motorcycle and produce a driver's license. The officer then noticed defendant, the passenger on the bike, immediately place his right hand in his right front pocket. Concerned for his safety, Officer Smith asked the defendant to step off the bike. The officer then conducted a pat down search for weapons on the two subjects. As a result of the search, Officer Smith observed partially extending from defendant's right front pants pocket a marijuana cigarette. Officer Smith retrieved the cigarette and kept it on his person for safekeeping.
During the stop, defendant was combative and abusive. He additionally made some threats against the officer. At trial, Smith testified that when he stopped the individuals, he detected the smell of alcohol and marijuana on defendant's clothes. Although he did not determine what intoxicant was in defendant's system, he testified that he determined defendant was intoxicated because he smelled of alcohol, he was combative and fairly unsteady, and his eyes were red and glassy.
Defendant was thereafter placed under arrest and advised of his miranda rights and of the charges against him. After defendant was arrested and advised of his rights, defendant made a statement to the officer that he had found the marijuana cigarette at the Phoenix Lounge and he was going to take it home and reroll it in new rolling paper.
Officer Smith subsequently turned the hand-rolled cigarette containing green vegetable matter over to Agent Charles DeLaughter. Agent DeLaughter performed a preliminary field test which proved positive for the presence of marijuana. The evidence was next turned over to Milton Dureau, director of the Jefferson Parish Sheriff's Office Crime Lab. At trial, Dureau, an expert in the field of forensic drug chemistry, testified that the chemical analysis he performed on the cigarette revealed that the green vegetable substance was marijuana.
After the state rested, the defendant testified in his own behalf; however, his version of events is somewhat different than that of Officer Smith. According to defendant, he and Reginald Bardal were coming *820 from the Phoenix Lounge when the officer stopped them at Calhoun and Milan Streets. The officer ordered them to get off the motorcycle and put their hands on the car. After searching them, the officer walked over to the bike to check it out. The officer then searched the individuals a second time. After this search, the officer said he found a marijuana cigarette in defendant's pocket. The officer then told defendant to get on his knees. Defendant asked the officer if he could sit down because the rocks were hurting his knees. When defendant sat down pursuant to the officer's permission, they "exchanged a few words".
By this time other police cars had arrived. After defendant was placed in the back of a car, they drove to the Phoenix Lounge and picked up someone else. They were then transported to the eastbank lockup.
Defendant admitted that he cursed the officer but denied that he threatened him. According to defendant, he could not take a swing at the officer because he was handcuffed. Defendant denied being drunk and denied having a marijuana cigarette. Defendant admitted that at the time of this incident he was on probation for another offense. He further admitted that approximately a week before this incident, he had contact with Officer Smith at which time he gave the officer a false name and identification.
The first assignment of error is whether the trial judge erred in assessing costs against an indigent defendant. In addition to the time to be served in parish prison, as set out above, the Court ordered defendant to pay various fees and court costs, granting him six months to do so. The court costs and fees consisted of the following: $25.00 clerk cost, $50.00 deputy cost, $10.00 district attorney cost, $10.00 coroner cost, $7.50 victim cost, $7.00 judicial building fee, and $50.00 drug law enforcement fee. Defendant now contends that the assessment of costs against him, an indigent, was manifest error.
LSA-C.Cr.P. art. 884 provides as follows:
If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense.
Article 884 allows the imposition of jail time in default of payment of a fine or costs. Although the article provides no exceptions to the general rule, it is well settled law that an indigent defendant may not be sentenced to additional jail time in default of payment of fine or costs. See State v. Conley, 570 So.2d 1161 (La.1990); State v. Trollman, 551 So.2d 28 (4th Cir. 1989); and State v. Newberry, 560 So.2d 121 (3rd Cir.1990). See also State v. Boynton, 537 So.2d 821 (5th Cir.1989).
Defendant relies on State v. Conley, supra, to support his argument. In Conley, the Louisiana Supreme Court concluded that the provision in the sentence for incarceration upon default of payment of fine was improper because an indigent person may not be incarcerated because of inability to pay. The court noted, however, that LSA-C.Cr.P. art. 886[2] permits the state to enforce collection of the fine in the same manner as a money judgment in a civil case.
Defendant also relies on State v. Hollis, 581 So.2d 403 (5th Cir.1991) to support his position. In Hollis, defendant was placed on active probation for eighteen months subject to several itemized special conditions, *821 including the payment of a $200.00 fine to help support the Indigent Defender Board and a monthly $20.00 probation fee. On appeal the state conceded that the special conditions of probation were improper and therefore, they were stricken by the court. Hollis is distinguishable from the instant case insofar as in Hollis the fine and fee were imposed as special conditions of probation.
It appears that defendant's argument in the present case is premature because he is not claiming that he is unable to pay the court costs. Moreover, the trial judge did not impose additional jail time on defendant in default of payment. As the previously discussed jurisprudence indicates, the mere imposition of court costs upon an indigent defendant is not unconstitutional. It is the imposition of additional jail time in default of payment which is impermissible. Therefore, since defendant in the present case was not sentenced to nor threatened with additional jail time upon default of payment, the sentence imposed was constitutional. If defendant fails to pay the court costs, collection may be enforced as a money judgment in a civil case. See LSA-C.Cr.P. art. 886, supra.
Assignment of error number two relates to whether the trial judge erred in finding the defendant guilty of simple assault. LSA-R.S. 14:36 defines assault as an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. LSA-R.S. 14:38 defines simple assault as an assault committed without a dangerous weapon.
As pointed out above in the review of the trial testimony, Officer Smith testified that he was concerned for his safety when he first asked the driver of the motorcycle to step from it when he noticed the defendant immediately place his right hand in his right front pocket. When asked whether thereafter the defendant had assaulted or attempted to commit a battery upon him, the officer replied in the affirmative, stating that the accused was "constantly swinging around", threatening his life and telling him that "he had something for" him "when he was on the street." As pointed out above, the defendant admitted cursing the officer, but denied threatening him.
As held by this Court as recently as in State v. Williams, 580 So.2d 448 (5th Cir. 1991) in evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Certainly, there was ample testimony here to convince the trial judge beyond a reasonable doubt that the accused had intentionally placed the arresting officer in reasonable apprehension of receiving a battery.
The third assignment of error is whether the trial court erred in convicting the applicant of possession of marijuana. The conflicting testimony of Officer Smith and the defendant has been reviewed; it required a credibility call which was resolved by the trier of fact in favor of the state. The same principles just above reviewed apply here also and we simply cannot say that the record shows that the trial judge erred in finding defendant guilty of possession of marijuana.
For the reasons stated we find no merit in the three assignments of error suggested by appellant. A thorough review of the record reveals no error patent.
The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The offenses with which defendant was charged are not triable by a jury because the maximum sentence for each offense does not exceed six months. The court cannot therefore exercise appellate jurisdiction in this matter, although the court may review the case under its grant of supervisory jurisdiction. La. Const. of 1974, Art. 5, Section 10; La.C.Cr.P. art. 912.1. While the appropriate procedural vehicle for the defendant to seek review of his conviction is an application for supervisory writs, both the Louisiana Supreme Court and this Court have recognized that, in the interest of judicial economy, an appeal improperly taken in a misdemeanor case may be treated as an application for supervisory writs, thereby enabling the reviewing court to rule on the merits of the application. City of New Orleans v. Ballansaw, 475 So.2d 768 (La.1985); State v. Cologne, 562 So.2d 24 (La. App. 5 Cir.1990).
[2] Article 886 reads as follows:

In the event of nonpayment of a fine, or of a fine and costs, within sixty days after the sentence was imposed, and if no appeal is pending, collection may be enforced in the same manner as a money judgment in a civil case. In addition, particular courts may provide by court rule for enforcement by the filing of an offset claim against the defendant, in accordance with R.S. 47:299.1 through 299.19. Amended by Acts 1989, No. 191 § 2.