526 So.2d 357 (1988)
STATE of Louisiana
v.
James WATKINS.
No. KA-8589.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
*358 Frank Desalvo, Archie B. Creech, New Orleans, for defendant.
Harry F. Connick, Dist. Atty., Patricia I. Edwards, Asst. Dist. Atty., New Orleans, for plaintiff.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
BYRNES, Judge.
Defendant, James Watkins was charged with possession with intent to distribute methamphetamine and diazepam, violations of R.S. 40:967/969, and found guilty of simple possession of diazepam. He was sentenced under the provisions of R.S. 40:983 to eighteen months active probation[1] with the special conditions that he pay $500.00 to the Criminal District Court Operations Fund and $100.00 in court costs. This appeal followed.

FACTS
On January 21, 1986, a search warrant was executed at 1125 Royal Street, Apt. 1. At the time the warrant was executed five people were in the apartment, including the defendant who was sitting on the sofa. After advising the five people of their Miranda rights, the officers asked if they had any valuables, guns, or contraband to declare. Watkins told the officers that he had a gun and some money hidden under a cushion of the sofa where he had been sitting. The officers lifted the cushion and found a gun and a bound wad of money. Opening the wad of money, the officers found a folded envelope inside. Inside the envelope, the officers found ten tablets of what was later identified as valium (diazepam). Packages of crystal methamphetamine were also found in various containers lying around the apartment.
At trial, Watkins admitted that the gun and money (over $1000.00) were his, but denied possessing the valium found in the *359 money. He testified that he lived in Houma, but was staying at the apartment during the Super Bowl. He testified that he received the money from a worker's compensation claim and had brought it with him to spend that weekend. He also testified that he bought the gun on the street a few hours prior to his arrest. He indicated that he had hidden the money and the gun because there were people in the apartment who were not known to him. He maintained that there was no envelope of drugs in the wad of money when he hid it.
Donald Barber, a co-defendant in the case and the owner of the apartment, testified that the valium was his and that he had hidden it under the cushion earlier in the day. He testified that when he hid the pills there was no money or gun under the cushion. He admitted pleading guilty as charged to both counts of the bill of information.
ERRORS PATENT
A review of the record for errors patent reveals that this case is not properly before this court on appeal. Watkins was convicted of possession of diazepam. However, his sentence was deferred under R.S. 40:983 and he was placed on eighteen months probation. In State v. Stevens, 497 So.2d 12 (La.App. 4th Cir.1986), this court held that:
Code of Criminal Procedure Article 912(A) provides that only a final judgment or ruling is appealable. In the instant case, no final ruling as to defendant's guilt has been made. Pursuant to La. R.S. 40:983, further proceedings have been deferred and upon fulfillment of the terms and conditions of her probation, defendant shall be discharged and the charges against her shall be dismissed. Ex Proprio Motu we deny jurisdiction over this appeal, State v. Ruth, 470 So.2d 167 (La.App. 4th Cir.1985) and shall treat this matter as an application for supervisory writs. Id. at 13.
See also State v. Jupiter, 493 So.2d 1208 (La.1986). We will therefore treat this matter as an application for supervisory writs.
ASSIGNMENTS OF ERROR
Although the defendant assigns three errors, he makes one combined argument. By his first assignment of error, Watkins contends that the trial court erred by denying his motion to suppress his statement concerning the gun and money found under the sofa cushions. His second and third assignments concern what he deems to be an insufficiency of evidence to support his conviction. He argues that the only evidence linking him to the valium he was convicted of possessing was the statement which he sought to have suppressed.
Although there was no formal hearing on the motion to suppress this statement prior to trial, a hearing was held during trial just prior to its introduction. Watkins argues that the statement should have been suppressed because he was not advised that anything he said could be used against him at trial before being asked if he had guns, valuables, or contraband to declare.
In order for a statement made by an accused during a custodial interrogation to be admissible, the State must prove that the accused had been advised of his Miranda rights and that he waived his right to counsel prior to the interrogation. State v. Harper, 430 So.2d 627 (La.Supreme Ct. case 1983). The State's burden is to prove that the statement was freely and voluntarily given and was not a product of threats, promises, coercion, intimidation, or physical abuse. R.S. 15:451; State v. Seward, 509 So.2d 413 (La.1987).
The term "custodial interrogation" includes situations which fall short of an actual arrest. Thus, if a person is questioned by police in a setting which indicates that he has been deprived of his freedom of action in any significant way, Miranda applies. State v. Menne, 380 So.2d 14 (La. 1980) cert. denied 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). This determination is made on a case by case basis. Factors which are helpful in making this determination include whether there was probable cause to arrest the accused before the questioning, whether the statements and actions of the police indicate an intention *360 to hold or restrain the accused, whether the accused reasonably believed he was restrained, and the extent to which the investigation had focused on the accused. State v. Thompson, 399 So.2d 1161 (La. 1981).
Our Supreme Court has taken a liberal view of when circumstances require that Miranda type cautions must be given. In State v. Menne, supra p. 19, the court, quoting from State in The Interest of Dino, 359 So.2d 586 (La.1978) cert. denied 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), reaffirmed its view that more restrictive federal jurisprudence on the subject:
"... does not govern our interpretation of Article 1, Sec. 13 of the 1974 Louisiana Constitution whose framers intended to adopt the Miranda edicts full-blown and unfettered." As we further stated in Dino:

"... [I]t appears that, in fact, there was an intention by the convention to go beyond Miranda and to require more of the State regarding the precise issue now under discussion. In Article I, Sec. 13 the cautions are triggered and must be given `when any person has been arrested or detained in connection with the investigation or commission of any offense.' The use of `detained' in addition to `arrested' was intended to prevent a narrow construction of the latter term." 359 So. 2d at 592.
In the present case there is no direct evidence as to whether the officer intended to detain the defendant. However, his action in ordering all occupants of the apartment into one location and reading them his version of the Miranda rights is at least consistent with an intent to detain. Likewise there is no direct evidence as to whether the defendant or the other occupants felt they were in custody or otherwise detained. However, their actions are also consistent with a belief that they were not free to go. No one tried to leave or appeared to consider it possible to do so. There was no probable cause to arrest defendant before he was questioned. As far as we can tell, he was unknown to the officers before the warrant was executed. However, it seems clear that the questions the officer asked focused the investigation on the defendant and his companions. The officer did not merely ask for general information such as their names and addresses, or even an explanation of their presence in the apartment. He specifically asked if anyone had any contraband to declare. This is asking a person to tell you if they have committed a crimecontraband by its very definition is illegal. Admitting you have contraband is admitting that you have broken the law. This type of questioning goes far beyond a general investigation. Given the totality of circumstances in this case there in no doubt that Miranda warnings were required before asking such a question of the defendant. La. Const. Art. 1, Sec. 13, C.Cr.P. Art. 218.1. Having concluded that Miranda applies to the present case we now analyze the adequacy of the warning given.
The officer who gave the warning in question testified as follows:
Q. Did you read those rights off of a form or do you have them committed to memory?
A. No, from memory, sir.
Q. Would you just for the record tell the court what your memory of those rights is?
A. I explained to them they had the right to have an attorney present during any and all questioning, that they need not make any statement at this time, that if they wished to make any statement without the benefit of an attorney they may do so, if they chose to do so they may stop at anytime (sic) and then request an attorney, if they cannot afford an attorney one would be provided for them free of charge by the City of New Orleans.
Q. And that's what you told them?
A. That's correct.
Q. And that's the way you always do it?
A. That's correct.
Q. And that's the way your memory is?
A. Yes, sir.
*361 The defense counsel then requested that the statement be suppressed. This request was denied.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held:
Prior to any questioning, the person must be warned that he had a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, whether retained or appointed. Id. at 444, 86 S.Ct. at 1612. (emphasis added)
The appellant contends that the warnings given by the officer were insufficient under Miranda because they did not include a warning that any statement he made could be used as evidence against him. We agree.
Article I, section 13 of the Louisiana Constitution of 1974 provides in part:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to assistance of counsel and, if indigent, his right to court appointed counsel.
This constitutional provision "incorporated... the right of an accused to be given the warnings required by Miranda v. Arizona." State v. Welch, 337 So.2d 1114, 1118 (La.1976). See also State in Interest of Dino, supra where the court held that the framers of Art. I, Section 13 "intended to adopt the Miranda edicts full-blown and unfettered." Id. at 590.
We perceive several problems with the sufficiency of the warning given in this case. To begin with, the officer told the defendant that he "need not make any statement at this time ..." This qualification implies that at some other time the defendant might have to make a statement. This strikes at the heart of the privilege against self incrimination and the right to remain silent. A defendant never has to make a statement if he choses not to. The officer's warning was misleading and inaccurate in this respect. It also failed to fully advise the defendant of his rights by not informing him that any statement he made could be used against him in court. This knowledge seems essential to an informed decision concerning a waiver of constitutional rights. Without it, a defendant cannot know the consequences of choosing to make a statement. Our Supreme Court has repeatedly made it clear that before a confession or inculpatory statement can be used at trial the state must establish that, prior to interrogation, the defendant was advised of his rights, which include being informed that anything he might say could be used against him. State v. Demourelle, 332 So.2d 752 (La. 1976), State v. Hollingsworth, 337 So.2d 461 (La.1976), State v. Rodrigue, 409 So.2d 556 (La.1982), State v. Baylis, 388 So.2d 713 (La.1980), State v. Willie, 410 So.2d 1019 (La.1982) cert. denied 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723.
The warning given in this case simply did not, expressly or by reasonable implication, make it clear that any statement the defendant made could be used at trial, nor does it clearly and unequivocably communicate to the defendant that he was free to make no statement.
Under these circumstances, the trial judge erred by not suppressing the statement. Because defendant's conviction was based in part on an inadmissable statement, it is hereby vacated.
VACATED
CIACCIO, J., dissents.
CIACCIO, Judge, dissenting.
A single question does not amount to interrogation. An officer executing a search warrant, who before searching asks the occupants of the place to be searched whether they have anything to declare, is not interrogating the occupants. In this case, the officer's substantial compliance with Miranda technicalities as extended, and his full compliance with Miranda safeguards as intended, satisfied the purpose of informing all the occupants of the apartment of their rights.
*362 The pivotal issue in this case is not whether defendant claimed as his the gun and substantial wad of money under the sofa cushion; possession of which was not a crime. The issue is whether the drugs, found either inside the wad of money or nearby under the cushion, belonged to defendant. I find that his statement claiming the gun and money as his was made freely, voluntarily, knowingly and intelligently, and should not be suppressed.
Accordingly, I respectfully dissent.
NOTES
[1] Although the docket master and both briefs note that the appellant was placed on inactive probation, the corrected minute entry indicates that he was placed on active probation.